Minute Q ⁀r Form (0…)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6376 | **DATE** | 11/13/2003 |
| **CASE TITLE** | Chamberlain Grp, Inc. vs. Skylink Tech Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for partial summary judgment (152-1) granted. Judgment is entered in favor of Defendant Skylink Tech Inc. on Count III of Chamberlain's Second Amended Complaint. All other claims are dismissed voluntarily without prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | NOV 1 4 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 189 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | 11/13/2003 | |
| | | | | date mailed notice | |
| ETV | courtroom deputy's initials Dobrid⌐ | | | ETV6 | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC.,<br>a Connecticut corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | No. 02 C 6376 |
| | ) | |
| SKYLINK TECHNOLOGIES, INC., | ) | Judge Rebecca R. Pallmeyer |
| a corporation, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Skylink Technologies ("Skylink") is a competitor of Plaintiff The Chamberlain Group ("Chamberlain") in the electronic garage door industry. In its second amended complaint ("SAC"), Chamberlain alleges that Skylink violated the Digital Millennium Copyright Act ("DMCA" or the "Act"), 17 U.S.C. § 1201 et seq., the Lanham Act, 15 U.S.C. § 1125, the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Uniform Deceptive Trade Practices Act, 805 ILCS 510/2, by distributing a universal remote transmitter capable of activating certain garage door openers manufactured and sold by Chamberlain.

On December 3, 2002, Chamberlain filed a motion for summary judgment on Count III of the SAC, in which Chamberlain alleges that Skylink violated the DMCA by manufacturing and marketing a transmitter that is capable of operating Chamberlain's "Security+" garage door opener system. According to Chamberlain, the Skylink transmitter unlawfully circumvents a technological protective measure known as "rolling code" in Chamberlain's garage door opener's computer program. This court denied Chamberlain's motion on August 29, 2003, and invited Skylink to file its own motion for summary judgment on Count III. *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 68 U.S.P.Q.2d 1009, 2003 WL 22038638, at *15 (N.D. Ill. Aug. 29, 2003).

189

Skylink accepted the invitation, and its own motion for summary judgment is now before the court.[1] For the reasons set forth here, that motion is granted.

## Background

The facts of this matter are more fully presented in this court's August 29, 2003 Memorandum Opinion and Order ("Order"). *See Chamberlain Group*, 2003 WL 22038638, at *1-9. This opinion assumes the reader's familiarity with the earlier decision and will summarize the relevant facts here only briefly.[2]

Chamberlain manufactures and sells garage door openers ("GDOs"), transmitters, and garage door remote controls, including a Security+ line that utilizes a "rolling code" technology. (Def. Facts ¶¶ 2, 6.) Chamberlain claims that it developed the rolling code technology as a security measure to prevent "code-grabbing" – that is, capturing and recording transmitter signals to obtain illegal access to a homeowner's garage. According to Chamberlain, "[t]his security feature is the main selling point for Chamberlain's line of rolling code GDOs and is the very reason homeowners are willing to pay top dollar." (Pl. Facts ¶ 6; *Chamberlain Group*, 2003 WL 22038638, at *2.)

Skylink distributes universal remote control devices that operate many different brands of GDOs and other remotely controlled equipment. One of those universal transmitters, the Model 39, can be used to open a variety of standard GDOs, as well as Chamberlain's Security+ rolling code GDO. In fact, the Model 39 has one setting dedicated solely to operating Chamberlain's GDOs and not any other brand. Before a Model 39 transmitter can be used to open a Security+

---

[1]   On October 21, 2003, the court granted the parties' joint motion to dismiss all other claims remaining in the SAC.

[2]   Chamberlain has objected to a number of the factual assertions in Defendant's 56.1 Statement of Material Facts on the basis that these statements are immaterial. Defendant has made similar objections to Plaintiff's 56.1(b)(3) Statement of Material Facts and has also moved to strike certain of Plaintiff's exhibits. To the extent the court addresses any facts in this decision, the court finds them material and overrules the parties' objections; to the extent the challenged facts are not addressed here, the objections are moot.

GDO, the user must first store the Model 39 transmitter signal into the GDO's memory, using procedures described in this court's earlier opinion. (Def. Facts ¶¶ 1, 8; Pl. Facts ¶ 2; *Chamberlain Group*, 2003 WL 22038638, at *2-4, 7.)

For purposes of Chamberlain's motion for summary judgment, both sides agreed that Chamberlain "does not place any restrictions on consumers regarding the type of transmitter they must buy to operate a Chamberlain rolling code GDO." Indeed, Chamberlain markets and sells its own universal transmitter called the "Clicker," but "does not advise consumers that they are limited to purchasing Clicker transmitters for any additional or replacement transmitters." (Def. Facts ¶ 7; *Chamberlain Group*, 2003 WL 22038638, at *7, 8.) In addition, the parties agreed that there is a history in the GDO industry of universal transmitters being marketed and sold to allow homeowners an alternative means to access any brand of GDO. (*Chamberlain Group*, 2003 WL 22038638, at *6.)

Chamberlain now contests these statements, however, and argues that it never authorized consumers or Skylink to "circumvent the security measure in the Chamberlain rolling code GDOs." (Pl. Facts ¶ 1; Tone Decl. ¶ 3.) Chamberlain points to its webpage, which lists only Chamberlain transmitters as "Your Compatible Replacement Control(s)," and to its owners' manual for rolling code GDOs, which instructs users on programming the GDO to operate with "additional Security+ remote controls." Chamberlain also stresses that its warranty for rolling code GDOs "does not cover . . . use of unauthorized parts or accessories . . . [or] alterations to this product . . ." (Pl. Facts ¶¶ 3-5.) With respect to the history of universal remotes, Chamberlain argues that Skylink's product is the first of its kind to be able to operate Chamberlain's rolling code GDOs and that it "did not believe it was possible to circumvent the rolling code system" before now. As a result, Chamberlain posits, it had no reason to warn its customers against using universal transmitters with its rolling code GDOs. (*Id.* ¶¶ 7-8.)

3

Chamberlain advanced similar arguments before the United States International Trade Commission ("ITC") in a July 16, 2003 complaint and motion for temporary relief or for a temporary exclusion order ("TEO"). On November 4, 2003, an Administrative Law Judge ("ALJ") made an Initial Determination that Chamberlain's allegations did not establish that Skylink violated the DMCA or provide any basis to issue a TEO. *See In the Matter of Certain Universal Transmitters for Garage Door Openers* ("*Matter of GDOs*"), Inv. No. 337-TA-497, 2003 WL ____ (Nov. 4, 2003). Specifically, the ALJ found that Chamberlain does not place any restrictions on the use of competing transmitters and that Chamberlain's customers have a reasonable expectation that they can access their garages using either a Chamberlain or a Skylink transmitter if the original transmitter malfunctions or is misplaced. *Id.* slip op. at 39, 41-42.

## Discussion

I.  **Summary Judgment Standard**

Summary judgment is warranted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Material facts are those that might affect the lawsuit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will draw all reasonable factual inferences in favor of the non-moving party. *Id.* "For the grant of summary judgment there must be no material fact in dispute, or no reasonable version of material fact upon which the nonmovant could prevail." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).

II.  **The Digital Millennium Copyright Act**

The DMCA was enacted in 1998 to implement the World Intellectual Property Organization Copyright Treaty and serves as a means to better protect copyright in the digital age. *Universal*

4

*City Studios, Inc. v. Corley*, 273 F.3d 429, 440 (2d Cir. 2001). The section of the Act at issue in this case provides:

> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that —
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(2). Under the Act, to "circumvent a technological measure" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, *without the authority of the copyright owner.*" 17 U.S.C. § 1201(a)(3)(A) (emphasis added).

Skylink argues that Chamberlain's DMCA claim fails because Chamberlain cannot demonstrate that Skylink's Model 39 transmitter provides unauthorized access to Chamberlain's software. (Def. Mem., at 1.) *See Chamberlain Group*, 2003 WL 22038638, at *14. As a preliminary matter, Chamberlain disputes that it bears the burden of proof on this issue, arguing that Skylink must prove that it was authorized to circumvent – not access – Chamberlain's software as an affirmative defense. The court disagrees. Under the Act, it is clearly the plaintiff's burden to demonstrate that the defendant circumvented a technological measure. This, in turn, requires a showing that the defendant acted "without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

Chamberlain notes that it never expressly authorized the circumvention of its GDOs and argues that under copyright and patent infringement law, implied authorization – more accurately, implied license – constitutes an affirmative defense. (Pl. Mem., at 5-6.) Chamberlain has not

5

provided any authority for its assumption that the patent law or copyright statute sets forth the proper analysis for a DMCA claim. *See, e.g., I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996) (prima facie case of copyright infringement requires a showing of (1) ownership of a valid copyright; and (2) copying of "constituent elements of the work that are original"; proof of "unauthorized access" to the copyrighted work not listed as part of prima facie case). In any event, regardless of which party bears the burden of proof on this issue, it is clear that to the extent Skylink was authorized to decrypt, descramble, avoid, bypass, remove, deactivate, or impair Chamberlain's GDOs, it cannot be held liable under the DMCA.

Skylink argues that in order for the Model 39 transmitter to operate the Chamberlain GDO, the homeowner must store the transmitter's signal into the GDO's memory. By doing so, Skylink reasons, the homeowner "must by definition have authorized access by the Skylink transmitter to operate the Chamberlain GDO." (Def. Mem., at 3.) In addition, Skylink reasons, the homeowners themselves are authorized to access the Chamberlain GDO because Chamberlain does not place any restrictions on the type of transmitters they are permitted to use. (*Id.* at 4.)

Chamberlain first argues that it never intended to authorize GDO purchasers or Skylink to circumvent the security measures in Chamberlain's rolling code GDOs, as evidenced by Chamberlain Vice President Mark Tone's declaration to that effect. (Pl. Mem., at 7.) Tone's conclusory assertion that Chamberlain did not authorize the circumvention of its rolling code GDOs has little weight. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("[c]onclusory allegations, unsupported by specific facts, will not suffice" to defeat a summary judgment motion). Chamberlain admits that the packaging for its Security+ GDO does not include "any restrictions on a consumer's ability to buy a replacement transmitter or additional transmitter." (Def. Facts ¶ 7; Gregory Dep., at 174-75.) *See also Chamberlain Group*, 2003 WL 22038638, at *14.

Chamberlain concedes that it never warned customers against using unauthorized transmitters but explains that it did not do so because it had no idea that other transmitters could

be made to operate its rolling code GDOs. (Pl. Mem., at 9-10.) Chamberlain's failure to anticipate

such technology, however, does not refute the fact that homeowners have a reasonable

expectation of using the technology now that it is available. In any event, as the ITC recently

explained:

> The fact that [Chamberlain] did not give customers any warning about not using any
> unauthorized transmitters because there were none at one time does not explain
> why Chamberlain has done nothing now that they know that there are transmitters
> that can be used with their rolling code GDOs. And the fact that there is new
> technology in the rolling code GDOs . . . does not mean that consumers'
> expectations in the GDO market are much different. That is, it is reasonable for
> consumers to expect that a universal transmitter that operates a rolling code GDO
> will be available.

*Matter of GDOs*, 2003 WL ____, at 39-40.

In the alternative, Chamberlain claims that restrictions on the use of competing transmitters

can be found on its webpage, which does not identify any non-Chamberlain transmitters in its

GDO/accessory compatibility chart, and in its owners' manual, which provides instructions for using

the Security+ GDO only with other Security+ transmitters. (Pl. Mem., at 7.) Again, the court is not

persuaded. The mere fact that Chamberlain's webpage and owners' manual only mention its own

products in no way demonstrates its intention to prohibit customers from using any competing

products. To the contrary, there is a history in the GDO industry of universal transmitters being

marketed and sold to allow homeowners an alternative means to access any brand of GDO. In

fact, Chamberlain itself markets and sells a universal remote under the brand name "Clicker."

Chamberlain did not advise its customers that no other universal transmitter would work on its

Security+ line, let alone prohibit them from using such products.

The court is similarly not persuaded that the warranty in Chamberlain's owners' manual

demonstrates its intention to prevent consumers from using non-Chamberlain transmitters. To be

sure, the warranty does not cover use of unauthorized accessories or product alterations. (Pl.

Mem., at 7-8.) Customers are not required to operate their GDOs in a manner that entitles them

7

to coverage, however, and instead, may choose to forgo any warranty benefits in favor of using "unauthorized accessories." *See, e.g., Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996) (warranty that required use of defendant's products did not force customers to comply; "[a]n owner of a new Xerox copier could forego the benefits of the warranty, buy service from Xerox or an independent provider, and purchase cartridges from the vendor of its choice"). Nor does anything in the warranty language convey Chamberlain's claimed intent to prohibit customers who do not want warranty coverage from using universal transmitters with the Security+ line.

Chamberlain next reiterates its argument raised in support of its summary judgment motion that under *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000), customers do not obtain implied authorization to circumvent the rolling code security measure simply by purchasing the GDO. (Pl. Mem., at 10-11.) As the court explained in its August 29, 2003 Order, however, *Reimerdes* is distinguishable from this case: "[T]he plaintiff in *Reimerdes* did in fact authorize certain circumvention of its technological protective measure pursuant to a license. It did not authorize circumvention by means of non-licensed software." *Chamberlain Group*, 2003 WL 22038638, at *15. *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 253 F. Supp. 2d 943, 947-48 (E.D. Ky. 2003) (plaintiff explicitly restricted the use of third-party toner cartridge refills for customers opting to buy toner cartridges at a discount under a shrinkwrap agreement). Chamberlain places no such limitations on the type of transmitter a homeowner can utilize to access his or her own garage.

In addition, a homeowner has a legitimate expectation that he or she will be able to access the garage even if the original transmitter is misplaced or malfunctions. *Chamberlain Group*, 2003 WL 22038638, at *15. Chamberlain disagrees, but "[i]t is rather curious why Chamberlain would take such an extreme position, considering that, if marketed as such, few homeowners would be inclined to purchase such a product." *Matter of GDOs*, 2003 WL ___, at 41. Under Chamberlain's theory, any customer who loses his or her Chamberlain transmitter, but manages to operate the

8

opener either with a non-Chamberlain transmitter or by some other means of circumventing the rolling code, has violated the DMCA. In this court's view, the statute does not require such a conclusion. GDO transmitters are similar to television remote controls in that consumers of both products may need to replace them at some point due to damage or loss, and may program them to work with other devices manufactured by different companies. In both cases, consumers have a reasonable expectation that they can replace the original product with a competing, universal product without violating federal law. *See id.* at 42.

Chamberlain argues that even if its customers are authorized to circumvent its security measures, that has no bearing on whether sellers have similar authorization. (Pl. Mem., at 15.) This argument ignores the fact that (1) there is a history in the GDO industry of marketing and selling universal transmitters; (2) Chamberlain has not placed any restrictions on the use of competing transmitters to access its Security+ GDOs; and (3) in order for the Skylink transmitter to activate the Chamberlain garage door, the homeowner herself must choose to store Skylink's transmitter signal into the Chamberlain GDO's memory. Chamberlain suggests that Skylink has misinformed Chamberlain's customers regarding the security risks involved in using a Model 39 transmitter to bypass the rolling code technology and that, as a result, those customers "cannot properly authorize the sale of the Model 39 transmitter for the purpose of circumventing of Chamberlain's technological measure." (Pl. Mem., at 12-13.) Again, however, homeowners must voluntarily program the Chamberlain GDO to operate with a Model 39 transmitter, which demonstrates their willingness to bypass Chamberlain's system and its protections.

Equally unavailing is Chamberlain's claim that exemptions to user liability under § 1201(a)(1), which are currently under consideration by the Librarian and Registrar of Copyrights, demonstrate that "Congress did not want fair use by a user, Chamberlain's customer, to be transferred to the trafficker, Skylink." (Pl. Mem., at 14.) Exempting a certain class of works from

the prohibitions of § 1201(a)(1)(A) does not speak to whether a copyright owner has authorized access to its software.

## Conclusion

For the reasons stated above, Skylink's Motion for Partial Summary Judgment on Chamberlain's DMCA Claim (152-1) is granted.

ENTER:

Dated: *Nov. 13, 2003*

_____
REBECCA R. PALLMEYER
United States District Judge